S. W. WILLIAMS, Appellee, v. DEEP ROCK OIL CORPORATION, Appellant.

No. 41669.

APRIL 4, 1933.

REHEARING DENIED SEPTEMBER 21, 1933.

Helmer & Minnich, for appellant.

M. C. Williams, for appellee.

ANDERSON, J.—The plaintiff, S. W. Williams, entered into a written contract with the defendant, Deep Rock Oil Corporation, on the 25th day of August, 1930, under the terms of which the plaintiff was to operate a service station for the defendant in the town of Carroll, Iowa, and was to receive as his compensation a commission of 3 cents per gallon for all grades of gasoline sold by him at said station at and for prices fixed and determined by the defendant company. The contract further provided that an additional commission of ½ cent per gallon should be paid to plaintiff at the end of the year on all grades of gasoline in the event that the sales at said station exceeded 60,000 gallons. There were additional provisions in the contract for compensation for the sale of motor oil, greases, etc., which are not involved in the present controversy.

The plaintiff entered into the service of the company on or about the date of the said contract and continued in its employ until the 19th day of May, 1931. In the latter part of February, 1931, a situation arose at Carroll in which a cheaper gasoline was put upon the market by competing service stations, and in order to meet such competition the defendant supplied to the plaintiff a grade of gasoline much cheaper than they had been handling at said station. It was orally agreed between the plaintiff and defendant that his commission on such cheaper grade of gasoline should be reduced to 1 cent a gallon; nothing, however, being said as to the provision of his contract in reference to the extra ½ cent per gallon bonus or commission. During the first part of April, 1931, a new form of contract was presented to the plaintiff by the defendant, providing that the plaintiff should receive as his compensation 3 cents per gallon for two certain high grades of gasoline, and 1 cent per gallon on all sales of competitive gasoline; said second contract omitting all reference to the extra ½ cent per gallon commission or bonus. This contract was dated February 26, 1931, but was not signed by the plaintiff until April 10, 1931. There is a sharp conflict in the record as to the negotiations leading up to the signing

of the second contract; the plaintiff claiming that he had sold at that time 78,505 gallons of gasoline, and that there was due him on account thereof, under the terms of his first contract, the one-half cent per gallon extra commission or bonus. He claims that he was promised the payment by the company of all or a portion of this bonus if he would sign the second contract tendered to him, and upon such promise he did sign the contract on April 10, 1931. No part of the bonus was paid to him, and on the 17th day of April, 1931, the so-called second contract was canceled by the company, and soon thereafter the plaintiff's employment with the defendant was discontinued. Plaintiff brought this action to recover the extra ½ cent per gallon claimed to be due him under the terms of his first contract.

The defendant, in resisting plaintiff's claim, maintained that the first contract of August 25, 1930, contemplated only the sale of the two high-grade gasolines, and that when the cheaper or competitive gasoline was introduced at the station that the provision in the contract relative to the extra ½ cent per gallon commission did not apply, and that such provision was canceled by the second contract dated February 26, 1931, and signed on April 10, 1931, and that on the date of said contract, February 26, 1931, the plaintiff had sold of the high-grade gasolines only 31,662 gallons, and that extra commission on account thereof was not due the plaintiff. The case was submitted to a jury, and a verdict returned for the plaintiff for $403.82, upon which judgment was entered, from which this appeal is prosecuted.

The appellant contends that the court erred in not directing a verdict for the defendant upon the defendant's motion for the reason that the first contract in reference to the extra commission or bonus did not cover any sales of gasoline made by the plaintiff except the two higher grades of gasoline, and then only when he had sold an excess of 60,000 gallons, and for the further reason that the second contract shows that it was to relate back and cover all transactions after its date, February 26, 1931, and that it cut out any extra commission on sales made after its date.

The defendant also contends that the court erred in holding that it was a jury question as to the time when the second contract became effective, and in submitting that question to the jury, for the reason that the second contract related back and became effective on its date and not on the date it was signed by the plaintiff.

The appellant further contends that the court erred in its instructions for the reason that they were as a whole conflicting and confusing.

It will be noticed that the main issue in the case is as to when the second contract became effective and controlling, if at all, between the parties; that is, whether it became effective on its date, February 26, 1931, or on the date it was actually signed, April 10, 1931. It appears without dispute that on the date this second contract was executed the plaintiff had sold 78,505 gallons of gasoline, and that he was objecting to signing the second contract until the extra commission of $\frac{1}{2}$ cent per gallon earned had been paid to him, and he claims, and there is some support in the record for such claim, that he was promised, by the defendant, payment of all or a portion of such extra commission and that such promise was the inducing cause for him signing the second contract on April 10, 1931. No part of the extra commission was paid to him, and after the so-called second contract was canceled by the company one week after its execution, plaintiff commenced this action to recover his claimed extra commissions upon the total number of gallons of all gasoline sold by him up to the time of his discharge by the company. There was no consideration for the execution of the second contract other than the promise of the defendant to pay the commission earned and due the plaintiff at the time the second contract was signed, and if such promise was not made or kept there would be an utter failure of consideration. However, the court, under proper instructions, submitted to the jury the question as to when the so-called second contract became effective, and that if the jury should find that at the time said second contract did become effective, the plaintiff had sold, for the defendant, gasoline in excess of 60,000 gallons, of all grades, then they should allow him $\frac{1}{2}$ cent per gallon on all such sales occurring before the second contract became effective. The jury found that the plaintiff had sold in excess of 60,000 gallons of gasoline before the second contract became effective and returned its verdict accordingly, and such verdict has sufficient support in the record.

The record discloses that in the negotiations leading up to the signing of the second contract the only question discussed was the reduction to 1 cent a gallon on the competitive gasoline, and that the extra $\frac{1}{2}$ cent per gallon bonus or commission was not a matter of discussion or controversy until about the time the second contract

was actually signed. There were no negotiations as to the making of a new contract until a few days before the so-called second contract was actually signed. The first contract provided, as we have indicated, that the plaintiff was to receive the extra ½ cent per gallon commission on *all grades of gasoline* providing the sales at the station exceeded 60,000 gallons, and there is no question as to the fact that at the time the second contract was actually signed the sales of all grades of gasoline at the station were in excess of 60,000 gallons. And at the time of the execution of the second contract there is no question that the plaintiff was claiming the extra commission earned and insisting upon its payment. It is clear that if the appellee had not signed the so-called second contract that his claimed extra commission would be due him, and the same would be true if the contract was not effective as between the parties until the day it was signed, April 10, 1931. Inducing the plaintiff to sign the second contract on April 10, 1931, may have been a ruse to defeat his then existing rights to the extra compensation.

We find no reversible errors in the record in the ruling upon the admission of testimony, or in the instructions of the court. The verdict has sufficient support in the evidence.—Affirmed.

All Justices concur.